**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 10-cv-00871-CMA

GINA L. MCDONALD,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

**ORDER AFFIRMING DENIAL OF SOCIAL SECURITY DISABILITY BENEFITS**

    This matter is before the Court on review of the Commissioner's decision denying Plaintiff Gina L. McDonald's applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-33 and 1380-83.  Jurisdiction is proper under 42 U.S.C. § 405(g).

    Plaintiff was born in February 1971 and is currently 40 years old.  (Administrative Record ("AR") at 104.)  She has completed two years of college.  (AR at 131.)  Her past work included jobs as a sales route driver and as an order taker.  (AR at 141-43.)  She initially alleged an onset disability date of June 1, 2002, due to depression and PTSD.  At her hearing before an Administrative Law Judge ("ALJ"), Plaintiff amended the date of onset to October 3, 2006.  (AR at 26.)

Plaintiff applied for disability insurance and supplemental security income benefits in October, 2006.  (AR at 104-12.)  Her claims were initially denied on January 26, 2007.  (AR at 70-75.)   Plaintiff sought review and an Administrative Law Judge (ALJ) held a hearing on December 4, 2008.  (AR at 24-62.)

At the hearing, Plaintiff testified that her work had been fairly stable and she had not been treated regularly for mental health issues until 2002, when her ex-husband reappeared in her life and they became involved in meth, drugs, and alcohol.  (AR at 36-38.)  Plaintiff's ex-husband was out of the picture by 2003 and she managed to quit using drugs, although her problems with alcohol persisted for some time.  (AR at 38.)  In 2006, Plaintiff moved to Pueblo, where she lived with her boyfriend and 13-year-old daughter.  She also has a 17-year old daughter who no longer lives at home.  (AR at 28.)

Plaintiff testified that she was doing about the same as when she started therapy.  (AR at 48.)  She had "good" and "bad" days.  On a scale of "1 to 10," with "10" representing her worst state, she rated her best days as a "5" and her worst days as a "9."  She had fifteen to twenty bad days per month.  (AR at 46.)  On those "bad days," she would stay in bed all day and be unable to perform even simple jobs.  (AR at 48-49.)  At the time of the hearing, Plaintiff was taking Trileptal for bipolarism, Prozac for depression, and Klonopin for anxiety and to help with sleep.  The Trileptal made her feel "zoned."  (AR at 32.)

Plaintiff testified that when she was depressed she was unable to socialize, had difficult talking, and became extremely tense or anxious around crowds and strangers. Plaintiff suffered from crying spells approximately once a month, anxiety attacks four to five times a week, irregular sleep, and rapid mood changes. (AR at 41-44.)

Plaintiff began peer specialist training in 2007 through Spanish Peaks Mental Health Clinic ("Spanish Peaks"), where she was also a client. (AR at 50.) Plaintiff indicated that she qualified for that training because she was "someone who was going to therapy all the time, doing what they're supposed to do, and had made progress in their life." (AR at 52.) In July 2008, she was hired as a paid peer specialist at Spanish Peaks where she led group therapy sessions. However, she quit that position in September, 2008 because she felt "symptomatic and overwhelmed." (AR at 52.) She testified that her feeling of being overwhelmed stemmed from problems in her home life with her oldest daughter. At the time of the hearing, her oldest daughter had moved out and, thus, that stress had been removed. (AR at 30-31.)

Martin Rauer, a vocational expert (VE), also testified at the hearing. He opined on a hypothetical question posed by the ALJ. The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education, and vocational history, who had the ability to perform semi-skilled work requiring medium exertion, subject to the following moderate limitations:

- maintain attention and concentration for extended periods;
- perform activities within a schedule;
- maintain regular attendance;
- be punctual within customary tolerances;
- respond appropriately to changes in the work setting

The VE testified that this hypothetical individual could perform all of Plaintiff's past relevant work. (AR at 57.) The VE also opined that a person who experienced a degree of dysfunction as Plaintiff testified to for fifteen to twenty days a month would be unable to perform any work in the competitive labor market.

The record contains two mental health opinions: a psychiatric review technique ("PRT") from Dr. Ellen Ryan (AR at 209-222), and a Mental Work Capacity Evaluation ("MWCE") prepared and signed by Nurse Marge Montoya,[1] and co-signed by Dr. Lee McNabb. (AR at 322-325.) Dr. Ryan opined that Plaintiff suffered from "mild" limitations, whereas Dr. McNabb and Nurse Montoya opined that Plaintiff suffered "marked" limitations. In addition, the record contains treatment notes recorded by Plaintiff's therapists. (AR at 177-205, 228-281, 299-321.)

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a). The issues in this case concern the ALJ's analysis at step four, which requires the ALJ to assess a claimant's residual functional capacity ("RFC") and determine whether the claimant is able to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv).

On February 26, 2009, the ALJ issued a decision, finding that Plaintiff was not disabled. The ALJ determined that Plaintiff had the RFC to perform a full range of work

---

[1] Nurse Montoya is not a medical source and she cannot provide a medical opinion that is entitled to weight. *See* 20 C.F.R. §§ 404.1513 (defining medical source) and 404.1527(d) (explaining how agency weighs medical source opinions). An ALJ *may* consider the same § 404.1527 factors when evaluating a non-medical opinion. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

at all exertional levels but with the following nonexertional limitations: a restriction to no more than semi-skilled work, subject to moderate limitations in the ability to maintain attention and concentration for extended period, the ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, and respond appropriately to changes in the work settings.  (AR at 18.)  Given these restrictions, the ALJ found that Plaintiff was capable of performing her past relevant work as a Sales Route Driver and an Order Taker.  (AR at 22-23.)

The Appeals Council denied Plaintiff's request for review on March 3, 2010.  (AR at 1-3.)  On December 15, 2009, Plaintiff filed a civil action, seeking judicial review of the denial of Social Security benefits.  (Doc. # 1.)  The Social Security Administrative Record was filed with this Court on July 16, 2010.  (Doc. # 8.)  On September 1, 2010, Plaintiff filed her Opening Brief.  (Doc. # 12.)  Defendant, the Commissioner of Social Security, responded on October 8, 2010, and Plaintiff replied on October 25, 2010.  (Doc. ## 13, 14.)

In this appeal, Plaintiff challenges three aspects of the ALJ's decision relating to the ALJ's step four RFC assessment.  Specifically, Plaintiff contends that (1) the ALJ did not properly weigh conflicting medical opinions; (2) the ALJ's RFC finding is not supported by substantial evidence; and (3) the ALJ failed to properly assess the credibility of Plaintiff's testimony.  (Doc. # 12 at iii.)

## I.  STANDARD OF REVIEW

The Court reviews the ALJ's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.  *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance."  *Id.* (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). "Evidence is not substantial if it is overwhelmed by other evidence in the record." *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).  In so reviewing, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency.  *Salazar v. Barnhart,* 468 F.3d 615, 621 (10th Cir. 2006).

## II.  ANALYSIS

### A. WHETHER THE ALJ PROPERLY WEIGHED THE MEDICAL OPINIONS

Plaintiff contends that the ALJ failed to weigh every relevant medical opinion using the 20 C.F.R. § 404.1527(d) criteria.[2]  The ALJ must give "good reasons" for the weight he ultimately assigns each medical opinion.  *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003).  However, the ALJ is not required to supply a formalistic

---

[2] Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(d).

recitation of all the factors.  *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).  The ALJ's decision must be sufficiently specific to make clear to any subsequent reviewer the weight given to the medical opinion, and the reason for that weight.  *Id.*

The ALJ accorded "no weight" to the joint conclusions of Nurse Marge Montoya and Dr. Lee McNabb, a psychiatrist at Spanish Peaks.[3]  (AR at 22.)  The ALJ first found that Dr. McNabb's opinion was not entitled to controlling weight because he was not a treating source.  Plaintiff first suggests that, "Dr. McNabb may actually meet the definition of a treating source."  (Doc. # 12 at 15.)  A treating source is one "who provides [the claimant] . . . with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]."  20 C.F.R. § 404.1502.  A treatment relationship generally exists "when the medical evidence establishes that [the claimant] see[s]**,** or ha[s] seen, the source with a frequency consistent with accepted medical practice . . . ."  *Id.*  At the hearing, Plaintiff testified that Dr. McNabb oversaw Plaintiff's "treatment team," but could not recall what Dr. McNabb looked like.  (AR at 54.)  There is no indication in the record that Dr. McNabb himself ever treated Plaintiff, let alone had an "ongoing treatment relationship" with her.  (AR at 177-205, 228-281, 299-321.)  Thus, Plaintiff's argument that Dr. McNabbb's opinion should have been weighed as a treating source fails.

---

[3] The ALJ also rejected Dr. Ryan's conclusions.  To the extent that the ALJ failed to properly evaluate Dr. Ryan's opinion, any failure would be harmless error.  *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (holding that the principle of harmless error applies to Social Security disability cases).  "When the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened."  *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004).

Plaintiff next contends that Dr. McNabb's opinion cannot be rejected merely because he did not directly treat her. 20 C.F.R. § 404.1527(d) ("we will evaluate every medical opinion we receive.")  However, the ALJ did not reject Dr. McNabb's opinion on that impermissible basis, but properly evaluated it using the § 404.1527(d) factors.[4]

The ALJ found that the extreme limitations identified by Nurse Montoya and Dr. McNabb were not supported by and were inconsistent with the evidence in the record. 20 C.F.R. § 404.1527(d)(3) (supportability), (d)(4) (consistency). The MWCE stated that the alleged onset of her psychological condition (May 2005) was consistent with their treatment records, yet Plaintiff's first consultation at Spanish Peaks was not until October 2006. (AR at 177, 323.)  Further, the ALJ found that the conclusions of Nurse Montoya and Dr. McNabb were inconsistent with the actual observations of various treating sources.[5] (AR at 22) ("when comparing the actual observations of various treating sources . . . the undersigned can find no support for the severity of their conclusions and affords them no weight.").

---

[4] Plaintiff cites to *McGoffin* for the proposition that an ALJ may reject a physician's opinion "only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." 288 F.3d at 1252 (emphasis removed). Plaintiff omits a key qualifier. *McGoffin* discusses the process of rejecting a **treating** physician's opinion. As discussed above, Dr. McNabb was not a treating physician. In addition, even if Dr. McNabb were a treating physician, the ALJ rejected his opinion based on contradictory medical evidence, *i.e.* the treatment notes taken by Plaintiff's treating sources.

[5] The Court also notes that the MWCE is merely a checked off form that does not provide any insight into how Nurse Montoya and Dr. McNabb arrived at their conclusions. These sort of "check-the-box forms" are considered weak evidence of a disability. *See Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987).

**B.     WHETHER THE ALJ'S RFC IS SUPPORTED BY SUBSTANTIAL EVIDENCE**

After considering the evidence, the ALJ concluded that:

> [Plaintiff's] complaints of difficulty with medication side effects would reasonably limit her to work that was not complex and involved moderate limitations in the ability to maintain attention and concentration for extended periods.  Her difficulties with depression would cause her moderate limitations in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, while her anxiety would cause her moderate limitations in the ability to respond appropriately to changes in the work settings.

(AR at 22.)

An ALJ must make specific RFC findings based on all of the relevant evidence in the case record.  *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir.1996); SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996).  Those findings must be supported by substantial evidence.  *See Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999).  The ALJ is responsible for the RFC assessment.  20 C.F.R. § 404.1546(c).

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence . . . the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p.

In arriving at his RFC assessment, the ALJ considered treatment notes from Spanish Peaks covering the applicable period (AR at 177-205, 228-281, 299-321), the opinion of Dr. Ryan (AR at 208-222), Plaintiff's Function Report (AR at 133-40),

9

Plaintiff's testimony at the hearing (AR at 24-62), the conclusions of Nurse Montoya and Dr. McNabb (AR at 322-325), and GAF scores. (AR at 184, 193.) [6]

Plaintiff presents two arguments for her claim that the ALJ's decision was not supported by substantial evidence. First, Plaintiff contends that the ALJ addressed only the parts of the record supporting a finding of disability. *See Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) (the ALJ "may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)). For example, Plaintiff points to the October 3, 2006 intake assessment form, in which the evaluator noted that Plaintiff had sleep problems, a flat affect, low energy, some difficulty concentrating, and depression. (AR at 181-82.) Although the ALJ did not address these characteristics when discussing the intake assessment, the ALJ had already found that Plaintiff suffered from dysthymia and PTSD. Thus, the issue was not whether Plaintiff suffered from depression, but whether the symptoms of depression caused her to be disabled. An assessment form stating that Plaintiff was "depressed" does not help determine the impact of the depression on her ability to function. The only two pieces of evidence in the record that contradicted the ALJ's findings were the

---

[6] Plaintiff seems to argue that the ALJ found the GAF scores to "automatically trump" the MWCE opinion of Nurse Montaya and Dr. McNabb . (Doc. # 12 at 22.)  A GAF score is a piece of evidence that may be considered along with the rest of the record. *See Petree v. Astrue*, 260 F. App'x 33, 42 (10th Cir. 2007) (unpublished). Plaintiff admits that GAF scores "constitute conflicting evidence." There is no indication in the record that the ALJ relied exclusively on GAF scores. Given his thorough review of the treatment notes, it appears to this Court that the ALJ merely considered the scores as part of his total review of the objective evidence. (AR at 21.)

MWCE and Plaintiff's testimony at the hearing. The ALJ acknowledged this evidence and sufficiently explained his reasons for rejecting it.

Plaintiff also argues that the ALJ's RFC finding is not supported by substantial evidence because the record contained no medical opinion finding that Plaintiff suffered "moderate" limitations. Dr. Ryan found only mild limitations whereas Nurse Montoya and Dr. McNabb found marked limitations. Because the ALJ rejected both these assessments and made an RFC finding that fell between them, Plaintiff claims that the ALJ must have impermissibly substituted his own lay opinion for that of medical professionals. *See Moon v. Barnhart*, 159 F. App'x 20, 23 (10th Cir. 2005) (unpublished) (finding that an ALJ's RFC assessment was not based on substantial evidence where ALJ split the difference between two physician RFC assessments without specifying what credible evidence he used to reject the doctor's RFCs or what evidence supported his own).

This Court is not persuaded. Although the record did not contain a medical source opinion that specifically opined that Plaintiff suffered from "moderate" limitations, Plaintiff points to no case, and this Court has found none, precluding an ALJ from making a RFC step four assessment unless the record includes an opinion from an accepted medical source opinion.[7]  *See Castine v. Astrue*, 334 F. App'x 175, 178-79

---

[7] At oral argument, the Court requested that Plaintiff file supplemental briefing on whether the ALJ is prohibited from making a RFC step four assessment that is not in accord with any medical source opinion. The Court has reviewed Plaintiff's supplemental briefing. (Doc. # 20.) As Plaintiff concedes, there does not appear to be any Tenth Circuit case law requiring the ALJ to link his RFC assessment to a medical source opinion, provided, however, that the RFC assessment is linked to substantial evidence in the record. *See Billups v. Barnhart*, 322 F. Supp. 2d 1220, 1227 (D. Kan. 2004).

(10th Cir. 2009) (unpublished) (finding that an RFC determination was supported by substantial evidence despite ALJ's rejection of all medical source opinions). By Plaintiff's logic, an ALJ's responsibility would consist merely of ratifying medical source opinions. However, an "RFC assessment must be based on **all** of the relevant evidence in the case record." SSR 96-8p (emphasis in original). There is no requirement in the social security regulations that an ALJ must come to the same conclusion as at least one medical source opinion. The Court also notes that this case was decided at step four, where "the claimant bears the burden to prove [his] disability." *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007). Thus, it was Plaintiff's burden to establish that her impairments prevented her from performing her past relevant work. *See Castine*, 334 F. App'x at 179.

Despite the lack of a corroborative medical source opinion, the Court finds that the ALJ's RFC assessment was supported by substantial evidence. As the ALJ stated, "[a] review of the evidence shows that [Plaintiff] and her counselor considered her capable of working, or of attending school to compete her degree. Both of these activities are indicative of a far greater capacity for focus, social interaction, adaption, and persistence than her testimony would indicate." (AR at 21.)

According to the treatment notes, Plaintiff consistently exhibited appropriate appearance, normal speech, stable mood and affect, intact judgment and insight, and organized, clear, and coherent thought processes. (AR at 180-82, 242, 253, 255, 258, 264, 266, 275, 307, 318). At her intake evaluation on October 3, 2006, Plaintiff told the

evaluator that she read self-help books, attended church, and prayed to cope with depression.  She took walks, baths, and lit candles to cope with anxiety.  She was described as pleasant and cooperative, with good hygiene, and was able to spell "world" backwards, although she was unable to do serial 3's and 7's.  Her memory was intact and she showed average judgment.  The clinician assessed her with a GAF score of fifty-two, exhibiting moderate symptoms.  (AR at 177-184.)  In December 2006, Plaintiff completed a function report, in which she recorded that she cared for her children, managed her finances, and prepared meals and did laundry on a daily basis.  (AR at 134-140.)

      Plaintiff responded well to a medication change in November 2006.  A nurse practitioner recorded that Plaintiff felt that the Effexor was working and that she was making improvements: "[Plaintiff] is complying with the medication and doesn't look near as depressed or anxious as . . . last time."  (AR at 198.)  Plaintiff's mood fluctuated throughout her treatment at Spanish Peaks, but, as the ALJ noted, much of that was related to her chaotic family situation.  (AR at 231, 238, 242, 253, 321.)  Plaintiff testified at the hearing that her oldest daughter has since moved out.  (AR at 31.)

      Treatment notes indicate that in early 2007, Plaintiff was looking forward to meeting with Rehabilitation Services and expressed an interest in further schooling, training, or job placement.  She considered a counseling or nursing type position.  (AR at 236.)  By July 2007, Plaintiff stopped taking medication because she felt more stable.  (AR at 258.)  Less than two months later, however, Plaintiff was "not doing well

off meds" and was put on Depakote.  (AR at 264-66.)  Plaintiff applied for a job at Spanish Peaks, but received no offer due to her legal history.  (AR at 274.)  Plaintiff's mood by early 2008 was described in the treatment notes as "euthymic" and her "depression [was] decreased."  (AR at 279-80.)

By May, 2008, Plaintiff was attending numerous groups or classes at the mental health clinic.[8]  (AR at 303-306.)  She started working as a "peer specialist," which she described as "fun."  She rated her depression and anxiety at 0/10, although her irritability was a 4/10, mostly due to her daughter.  (AR at 307.)  A clinician noted that Plaintiff was "helpful in assisting another client who had not experienced a turnaround by helping that client to identify recovery goals."  (AR at 308.)  Spanish Peaks eventually hired Plaintiff for a part-time paid position as a Peer Specialist and she was "excited about [the] new job."  (AR at 312.)  However, in August 2008, Plaintiff started feeling stressed again and she quit her job in September 2008.  (AR 318-19.)

It is a difficult task for an ALJ to determine RFC limitations, especially when the impairment is one of mental health.  Thus, the ALJ is required to rely on substantial evidence in arriving at his finding.  *See, e.g.*, *Haddock*, 196 F.3d at 1088.  In this case, the ALJ supported his finding that Plaintiff's functional limitations were only moderate with substantial evidence.

---

[8] "[Plaintiff] attended Morning Meeting, Exercise group, Pathways to Recovery group, Beginning Computers class, Cooking Unit and Reflect on the Day."  (AR at 303.)

## C.     WHETHER THE ALJ FAILED TO PROPERLY ASSESS THE CREDIBILITY OF PLAINTIFF'S TESTIMONY

"[C]redibility determinations 'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence." *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (quoting *Kepler v. Chater*, 68 F.3d 387, 390-91 (10th Cir. 1995)).  Provided the ALJ links his credibility assessment to specific evidence in the record, his determination is entitled to substantial deference.  *Id.* at 910.  The ALJ is not required to set forth a formalistic factor-by-factor recitation of the evidence, but must only set forth the specific evidence he relied on in evaluating Plaintiff's testimony. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).  Because the determination of credibility is left to the ALJ as the finder of fact, that determination is generally binding on the reviewing court.

Although the ALJ determined that Plaintiff's impairments could reasonably be expected to produce her alleged symptoms, the ALJ concluded that her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible "to the extent they are inconsistent with the residual functional capacity assessment." (AR at 21.)

Plaintiff argues that the ALJ went about his credibility findings backward, first arriving at his RFC assessment and then rejecting all inconsistent testimony.  The Court disagrees with this characterization.  The ALJ based his credibility finding on a comparison between Plaintiff's testimony and his thorough review of the treatment notes.  The ALJ noted that Plaintiff was looking for work during her alleged period of

15

disability, formulated plans to return to college, attended classes at Spanish Peaks, and was employed part-time as a peer counselor. (AR at 19-21.) The ALJ comprehensively explained how the record evidence contradicted Plaintiff's testimony.

The ALJ's credibility finding was not a "boilerplate" conclusion without any supporting evidence. *See McGoffin*, 288 F.3d at 1254. Rather, the ALJ properly considered objective and subjective factors and gave ample supporting reasons for his credibility determination. *See* 20 C.F.R. §404.1529 (discussing how ALJs evaluate symptoms).

### III. CONCLUSION

This Court finds that the ALJ's decision was supported by substantial evidence. The ALJ properly weighed the medical source opinions in the record and adequately explained his reasons for giving the opinions no weight. Although the ALJ's assessment was not in accord with either medical opinion, his decision was supported by the totality of the record evidence, including medical evidence in the form of treatment notes. In addition, the ALJ explained his reasons for finding Plaintiff's testimony not entirely credible and this Court finds no reason to reject that determination. Accordingly, the ALJ's denial of social security disability and supplemental income benefits is AFFIRMED.

DATED: April  13 , 2011           BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge